## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

JASON O. JIMENEZ,

                     **Plaintiff,**

    **v.**

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                    **Defendant.**

Civ. No. 15–3762 (KM)

**OPINION**

**KEVIN MCNULTY, U.S.D.J.:**

    Jason O. Jimenez brings this action pursuant to 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–434. For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is AFFIRMED.

## I.   PROCEDURAL BACKGROUND

    Mr. Jimenez seeks to reverse an ALJ's finding that he was not disabled from November 1, 2009, the alleged onset date, through January 6, 2014. He applied for DIB in October 15, 2012, claiming a complete inability to work as a result of injuries he sustained in a 2009 workplace accident, but especially in a 2010 automobile accident. (R. 12)[1] His application was denied initially on January 16, 2013, and upon reconsideration on April 23, 2013. (*Id.*). On November 7, 2013, ALJ Hilton R. Miller conducted an administrative hearing, at which Mr. Jimenez testified and was represented by counsel. (R. 29–72) ALJ

---

[1]      Pages of the administrative record (ECF no. 6) are cited as "R. __."

Miller also received testimony from Raymond E. Cestar, a vocational expert ("VE"), who concluded that Jimenez could perform his past relevant work as a tattoo artist, and also that a person with his residual functional capacity could perform three other unskilled, sedentary jobs that exist in significant numbers in the national economy. (R. 51–53)

On January 6, 2014, ALJ Miller issued his decision denying Mr. Jimenez's DIB application. (R. 12–23). The Appeals Council denied Jimenez's request for review (R. 1–6), rendering the ALJ's decision the final decision of the Commissioner.

## II.   STANDARD OF REVIEW AND REQUIRED FIVE STEP ANALYSIS

To qualify for Title II DIB benefits, a claimant must meet the insured status requirements of 42 U.S.C. § 423(c). To be eligible for SSI benefits, a claimant must meet the income and resource limitations of 42 U.S.C. § 1382. To qualify under either statute, a claimant must show that she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see, e.g., Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009).

### A. Standard of Review

As to all legal issues, this Court conducts a plenary review. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). As to factual findings, this Court adheres to the ALJ's findings, as long as they are supported by substantial evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)). Where facts are disputed, this Court will "determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as

2

adequate to support a conclusion." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (internal quotation marks and citation omitted). Substantial evidence "is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Id.* (internal quotation marks and citation omitted).

> [I]n evaluating whether substantial evidence supports the ALJ's findings ... leniency should be shown in establishing the claimant's disability, and ... the Secretary's responsibility to rebut it should be strictly construed. Due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails.

*Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (internal citations and quotations omitted). When there is substantial evidence to support the ALJ's factual findings, however, this Court must abide by them. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)); *Zirnsak*, 777 F.3d at 610–11 ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder.").

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Secretary's decision, or it may remand the matter to the Secretary for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865–66 (3d Cir. 2007) (not precedential).

Outright reversal with an award of benefits is appropriate only when a fully developed administrative record contains substantial evidence that the claimant is disabled and entitled to benefits. *Podedworny*, 745 F.2d at 221–222; *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five step inquiry. *See Podedworny*, 745 F.2d at 221–22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000); *Leech v. Barnhart*, 111 F. App'x 652,

3

658 (3d Cir. 2004) ("We will not accept the ALJ's conclusion that Leech was not disabled during the relevant period, where his decision contains significant contradictions and is therefore unreliable.") (not precedential). It is also proper to remand where the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted).

### E. The ALJ's Five-Step Analysis

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. Review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulations.

**Step 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, move to step two.

**Step 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.

**Step 3:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A. (Those Part A criteria are purposely set at a high level, to identify clear cases of disability without further analysis.) If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**Step 4:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.

**Step 5:** At this point, the burden shifts to the SSA to demonstrate that the claimant, considering her age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.,* 474 F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

ALJ Miller properly followed that five step process. His conclusions may be summarized as follows.

At step one, the ALJ determined that Mr. Jimenez had not engaged in substantial gainful activity in the relevant period. (R.14 ¶¶ 1, 2) At step two, the ALJ found that Mr. Jimenez had the following severe impairments: "back disorder and neck disorder (20 CFR 404.1520(c))" (R. 14 ¶ 3)

At step three, the ALJ determined that Mr. Jimenez's impairment or combinations of impairments did not meet or medically equal the severity of one of the listed impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A. (R. 16 ¶ 4)

The ALJ defined Mr. Jimenez's residual functional capacity (RFC) as follows:

> 5.      ... [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a). The claimant is limited to lifting and/or carrying ten pounds occasionally and ten pounds frequently. He can stand and/or walk with normal breaks for a total of about two hours in an eight-hour workday. He can sit with normal breaks for a total of about two hours in an eight-hour workday. He can occasionally climb ramps or stairs. He can never climb ladders, ropes, or scaffolds. He is limited to only occasional balancing, stooping, and kneeling. He cannot crouch or crawl. He is limited to occupations that do not require manipulation using the lower extremities such as foot controls of foot pedals. The claimant is limited to only occasional overhead reaching. He is limited to frequent handling and frequent fingering. The claimant is limited to occupations that do not involve hazards such as dangerous machinery, vibrations, or unprotected heights.

(R. 16–17 ¶ 5)

At step four, the ALJ found that Mr. Jimenez was capable of performing past relevant work as a tattoo artist. (R. 21 ¶ 6) This issue was complicated to some degree by the fact that he worked off the books and was not licensed, so that a literal return to the same job would be problematic.

Accordingly, the ALJ made "alternative findings for step five of the sequential evaluation process" (R. 21), that Mr. Jimenez was capable of performing other jobs that exist in significant numbers in the national economy. Acknowledging the very significant limitations of Mr. Jimenez's RFC, and relying on the testimony of the vocational expert, the ALJ identified three sedentary and unskilled jobs that Jimenez could perform: order clerk (DOT # 209.567-014); assembler (DOT# 706.684-030); surveillance system monitor (DOT # 379.367-010). Such jobs, according to the VE, existed in numbers in the thousands regionally, and in the tens of thousands nationally. (R. 22)

Accordingly, ALJ Miller concluded that Mr. Jimenez was not under a disability, as defined in the SSA, from November 1, 2009, through January 6, 2014, the date of the ALJ's decision. (R. 23 ¶ 7)

## III.   MEDICAL EVIDENCE AND CLAIMANT'S TESTIMONY

### A.   Medical Evidence

I summarize some of the more important medical evidence.

Following his accident, Mr. Jimenez was treated by Frank Rotella, D.O. Through July 2010, the treatment was conservative: medication, including trigger point injections, and physical therapy (R. 485, 504-90, 650-61, 691-702, 847-66). An MRI of the cervical spine showed muscle spasm, a right-sided disc bulge at C4-C5, and a central disc bulge at C5-C6 (R. 467, 489, 611, 703). An MRI of the lumbar spine showed a central herniation at L4-L5, a central bulge at L5-S1, and a focal herniation at L1-L2 (R. 469, 488, 610, 704). The cervical spinal cord, conus, cauda equinal, and thecal sac were all normal (R. 467, 469, 488-89, 610-11, 703-704). Nerve conduction studies performed on April 29, 2010, showed right upper extremity radiculopathy at C5, but no abnormalities in the lower extremities (R. 470-73, 480-83, 490-93, 612-15).

6

Beginning on June 23, 2010, Mr. Jimenez saw Solomon Halioua, M.D., of the Caddle Brook Pain Center (R. 485-87, 494-96, 607-609, 616-18). Jimenez complained of pain radiating from his back into his arms and legs. (Tr. 485, 494, 607, 616). An examination revealed spasm and tenderness, but full strength, normal reflexes, and diminished sensation along the C6 nerve root bilaterally (Tr. 495). Dr. Halioua's diagnosis was lumbar pain secondary to facet arthropathy and cervical radiculitis. He prescribed medication and performed six lumbar facet injections (R. 487, 496, 592-605, 609, 618, 627-38, 669-80).

On July 20, 2010, for purposes of litigation arising from the car accident, Dr. Rotella prepared a summary letter. (R. 643-48, 684-90, 847-53). He found a limited range of motion, muscle spasm, and tenderness around the spine, but no gross neurological deficits. He reported that the wrist pain had resolved itself. (R. 646-47, 688-89, 848-49). Two months later, Dr. Rotella wrote a second, similar letter, but he had not seen Mr. Jimenez in the interim. (R. 641, 682). On November 8, 2011, Dr. Rotella supplied a Certificate of Permanency in connection with the lawsuit arising from the car accident (R. 640, 681).

In the period November 2011–March 2012, Mr. Jimenez visited the emergency room four times. (R. 714-28, 730-47, 749-61, 763-75, 830-46). Twice he reported low back pain. The physical examination, however, was normal, with full motion, a steady gait, normal strength, normal sensation, and normal reflexes (R. 714-28, 720, 726-27, 838, 844).

On November 21, 2012, Dr. Rotella (who had not seen Mr. Jimenez since July 20, 2010) reviewed the emergency room records and wrote a third letter confirming his prior opinion. (R. 867-68). Dr. Rotella re-certified his prior opinion of permanence on December 6, 2012 (R. 869).

On December 26, 2012, Marc Weber, M.D., examined Mr. Jimenez at the request of the SSA. (R. 820-21). Jimenez reported chronic back pain and a history of multiple lumbar disk herniations. (R. 821) An x-ray was normal (R. 822). On examination, Dr. Weber found tenderness and a limited range of

7

motion of the lumbar spine, but no muscle spasm or atrophy; full strength in the upper extremities, including grip and pinch strength; full strength in the lower extremities; intact sensation; normal reflexes; normal cervical motion; and an inconsistent positive straight leg raising (SLR) test in the supine position.

Dr. Weber's examination revealed that Mr. Jimenez could walk at a reasonable pace, fully extend his hands, make fists, oppose his fingers, separate papers, lift a pin off the table, stand on his heels and toes, squat, independently ascend and descend from the examination table, and put his shoes on and off. (R. 821, 824).

### B.    Jimenez's Testimony

Mr. Jimenez testified that he is in pain every day. (R. 35) The pain is in his knee, back, neck, and right wrist; an injury to his ankle no longer bothers him. (R. 28) His right, dominant hand, hurts and his right arm is weak; he is told by his doctors that his neck injury is the source of that pain. (R. 39) He cannot pick up a bag of groceries "as well as [he] used to," and states that he cannot lift 10 pounds. (R. 39) He estimates that he can lift 5 pounds. (R. 42)

He has sharp pains in his neck and back "every day, all the time." (R. 39–40) He also has muscle spasms in his neck and back. (R. 40) His neck motion is limited, and he cannot lift his arm over his head. (R. 41) Sitting causes his back to hurt. (R. 41–42) Although he testified that he is depressed, his attorney acknowledged that no severe psychological impairment was claimed. (R. 43)

He does not exercise, and cannot play with his children. (E. 35–36) After walking the children two or three blocks to school, he experiences terrible pain and must rest. (41) He spends his days "[i]n pain, in the house, trying to stay away from people." (R. 42) He has not considered trying a less strenuous job, because he is in "[s]o much pain." (R. 43).

### III.   ANALYSIS

### A.   Subjective Pain, Severe Impairment, and RFC

Citing *Cotter v. Harris,* 650 F.2d 681 (3d Cir. 1981), Mr. Jimenez faults the ALJ for failing to give sufficient consideration to his subjective complaints of pain when determining his impairments and his residual functional capacity. That determination required the ALJ to weigh the credibility of Jimenez's testimony in the context of the medical evidence. I find that the ALJ gave due consideration to all of the evidence, made findings, and gave reasons for them. His determinations are supported by substantial evidence.

A claimant's subjective complaints merit careful consideration, but the ALJ is not required to accept them uncritically. *Chandler v. Comm'r of Soc. Sec.,* 667 F.3d 356, 363 (3d Cir. 2011) (citing 20 C.F.R. § 416.929). Rather, the ALJ is required to assess whether and to what degree such complaints are credible. *See* SSR 96-7p, 1996 WL 374186, at *4.

Social Security Regulation 96-7P provides:

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

Such credibility determinations are reserved for the ALJ:

> [W]hile an ALJ must consider a claimant's subjective complaints, an ALJ has discretion to evaluate the credibility of a claimant and arrive at an independent judgment in light of medical findings and other evidence regarding the true extent of the pain alleged by the claimant. Subjective complaints cannot alone establish disability.

*Gantt v. Comm'r Soc. Sec.*, 205 F. App'x 65, 67 (3d Cir. 2006) (internal quotations and citations omitted). *See also* 20 C.F.R. § 404.1529(c); *Malloy v. Com'r of Soc. Sec.*, 306 Fed. App'x 761, 765 (3d Cir. 2009) (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)); *Davis v. Com'r of Soc. Sec.*, 240 F. App'x 957, 960 (3d Cir. 2007).

The ALJ may reject subjective complaints, for example, if they are not credible in light of the other evidence of record. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999). The ALJ is called upon to evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which they limit his ability to perform basic work activities. *See* 20 C.F.R. § 404.1529(c)(2). As to that issue, "[o]bjective medical evidence ... is a useful indicator." *Id.* The ALJ may also examine factors that precipitate or aggravate the symptoms, medications and treatments, and daily living activities. 20 C.F.R. § 1529(c)(3).

The ALJ's credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." SSR 96-7P; *see also* 20 C.F.R. §§ 404.1529(b), 416.929(b). What is required overall is that the ALJ give the claimant's testimony "serious consideration," state his reasons for discounting it, and make "specific findings." *Rowan v. Barnhart*, 67 F. App'x 725, 729 (3d Cir. 2003). Where that has been done, a reviewing court will defer to the ALJ's credibility determinations.

The ALJ here discharged that responsibility. By no means did the ALJ simply dismiss Mr. Jimenez's complaints; the stringent limitations of the RFC are testimony to that. But Judge Miller did find Jimenez less than credible as to the disabling severity of his impairments. (R. 18) The ALJ's decision, supported by substantial evidence of record, represents a classic credibility determination and a weighing of the evidence, to which the court must defer.

The ALJ found back and neck impairments, the legacy of a 2010 auto accident, to be severe. (R. 14)[2] In so finding, he discounted the contrary opinions of Drs. Esther Tomor and Rizwan Mohammed, who opined that it was a non-severe impairment. The medical evidence, including MRIs, convinced the ALJ that a finding of severity was justified. (R. 20)

The real focus of Mr. Jimenez's application was a claim of constant, disabling pain. Jimenez testified that he is in severe pain every day, that he cannot lift more than 5 pounds, and that the pain is so great that he does little besides sit at home and avoid people. He acknowledged no daily activities of any kind, and stated that he cannot even try to return to any sort of work.

ALJ Miller considered this testimony in the context of, *inter alia*, prior statements by Mr. Jimenez. As for daily activities, the ALJ noted that Mr. Jimenez had made inconsistent representations to physicians. To Dr. Weber, he reported that he could perform activities of daily living. In a function report dated October 24, 2012, he reported that he cares for a dog, washes dishes, and watches movies. He reported preparing meals, shopping twice a month, and cleaning his home. He stated that he takes public transportation, reads magazines, and socializes with his girlfriend. (R. 19–20)

In short, the ALJ's skepticism as to Mr. Jimenez's testimony about his daily activities had a substantial basis in the evidence of record.

―――――――――――

[2] The ALJ considered other impairments but found that, alone or in combination with the others, they were not severe. That finding was supported by substantial evidence. Medical evidence, including x-rays and the examination by Dr. Marc Weber, demonstrated that prior, separate ankle and knee injuries from 2009 had healed to the point that they imposed only minimal limitations. (R. 14) A skull contusion from 2010, as well as a small testicular hydrocele, had not been treated recently, were not the subject of recent complaints, and did not give rise to any serious functional limitation. (R. 15) "Anxiety post motor vehicle accident," again dating from 2010, was apparently not even claimed to be severe or disabling. (R. 15) A spinal disorder did not meet the requirements of Listing 1.04A. Dr. Weber's examination showed 5/5 muscle strength of both arms and legs, with normal gait and reflexes. There was some limitation of motion of the lumbar spine, but no muscle atrophy or spasm. (R. 16)

The ALJ also considered Mr. Jimenez's testimony in the context of the medical evidence.

As found by the ALJ, the medical evidence, including the MRIs, were consistent with degenerative disc disease and cervical radiculopathy. Disc bulges and disc herniations of the lumbar spine were present. The conus, cauda equine, and thecal sac were unremarkable, and there were no signs of nerve root impingement or cord involvement. The ALJ noted that physical exams (apparently, the 2011–12 emergency room visits) had shown no signs of localized weakness, normal motor strength, and normal sensation, as well as a steady gait. (R. 18)

ALJ Miller noted that the course of care had been conservative and sporadic, undermining any conclusion of disability. There was physical therapy in 2010, but very little thereafter. (R. 20) Jimenez's physical therapist described his pain as "intermittent"; improvement was clearly documented, for example in cervical range of motion. (R. 18) There had been no surgery or inpatient treatment. (R. 20) Physical therapy aside, care had consisted mostly of prescription pain medication. (R. 20)

The ALJ summarized the examinations of Dr. Rotella through July 20, 2010. These revealed tenderness and spasm, but no gross neurological deficits, normal muscle tone, and no spasticity or atrophy. Gait and reflexes were normal. (R. 19)

Pain medicine injections in 2010 provided some relief, but it was temporary. There were three visits to Jersey City Medical Center. On November 14, 2010, he presented with pain and swelling of the right hip and left thigh. On February 26, 2011, he complained of musculoskeletal pain and abscesses on his neck and arms. On September 16, 2011, he complained of testicular pain. During that visit, he reported no painful distress and showed no sign of spinal tenderness. He was ambulatory upon discharge. (R. 19)

On March 19, 2012, Mr. Jimenez again returned to the emergency room, complaining of chronic lower back pain. The intake physician noted no obvious

discomfort, and reported that he walked with a steady gait. The exam was negative for tenderness, spasm, and deformity. He exhibited full motor strength and intact sensation. He was nevertheless prescribed Percocet and Naprosyn. (R. 19)

The ALJ noted that there was no significant further treatment. On December 26, 2012, Mr. Jimenez was examined by Marc Weber, a consultative internist. Jimenez reported taking no pain medication. He reported lower back pain, extremity weakness, and occasional numbness or tingling, but showed few signs of any neurological deficits. He ambulated without assistance. He displayed full muscle strength in his arms and legs, including grip strength. Sensation was intact. Range of motion for the cervical spine was normal. A straight leg raise test was positive only in the supine position. Range of motion was normal for the lower extremities. He was able to extend his hands, make fists, and oppose his fingers. He got on and off the examination table, and put his shoes on and off, without assistance. An x-ray of the lumbar spine showed no nerve root compromise. (R. 19)

ALJ Miller noted, and discounted, conclusions of Dr. Rotella and Dr. Vijakumar Kulkarni that Mr. Jimenez had a disability. Both opinions, he found, were conclusory. They did not involve a careful function-by-function analysis. They were also inconsistent with much of the medical evidence, the conservative and sporadic treatment history, and Jimenez's ability to engage in the activities of daily living. (R. 20)

It was based on this weighing of the evidence that the ALJ found the impairment severe, and defined Mr. Jimenez's RFC (quoted at p. 5, above), which limited him to sedentary work.

The ALJ's weighing of evidence was careful, and he made specific findings to support his conclusions. Whether the court would weigh the evidence the same way is irrelevant. Because the ALJ's findings and conclusions are supported by substantial evidence, I must sustain them.

13

### B.    Past Relevant Work (Step 4)

ALJ Miller considered whether Mr. Jimenez could return to his prior work as a tattoo artist, given his residual functional capacity:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a). The claimant is limited to lifting and/or carrying ten pounds occasionally and ten pounds frequently. He can stand and/or walk with normal breaks for a total of about two hours in an eight-hour workday. He can sit with normal breaks for a total of about two hours in an eight-hour workday. He can occasionally climb ramps or stairs. He can never climb ladders, ropes, or scaffolds. He is limited to only occasional balancing, stooping, and kneeling. He cannot crouch or crawl. He is limited to occupations that do not require manipulation using the lower extremities such as foot controls of foot pedals. The claimant is limited to only occasional overhead reaching. He is limited to frequent handling and frequent fingering. The claimant is limited to occupations that do not involve hazards such as dangerous machinery, vibrations, or unprotected heights.

(R. 15–17 ¶ 5).

The ALJ concluded that Mr. Jimenez could perform such work. Jimenez objects that he was not licensed, and held that job on an informal, off-the-books basis. In a literal sense, then, he could not legally return to that job. He also claims that he would be physically unable to meet its demands.

The SSA essentially concedes the issue, because it is of no consequence.[3] The ALJ, after making this step 4 finding, made step 5 findings in the alternative that independently rule out a finding of disability.

### C.    Work Existing in the National Economy (Step 5)

"Although the claimant is capable of performing past relevant work, there are other jobs existing in the national economy that he is also able to perform. Therefore, the Administrative Law Judge makes the following alternative

---

[3] The agency notes in passing, however, that a licensing issue should be considered irrelevant, because it is an issue of legal eligibility, not one of medical impairment or functional capacity. *See Melvin v. Comm'r of Soc. Sec.*, 226 F. App'x 126, 128 (3d Cir. 2007).

findings for step five of the sequential evaluation process." (R. 21) Acknowledging the very significant limitations of Mr. Jimenez's RFC, and relying on the testimony of the vocational expert, the ALJ identified three sedentary and unskilled jobs that Jimenez could perform:

(a) order clerk (DOT # 209.567-014) (1100 jobs regionally, 19,000 nationally);

(b) assembler (DOT# 706.684-030) (600 jobs regionally, 20,000 nationally);

(c) surveillance system monitor (DOT # 379.367-010) (1400 jobs regionally, 74,000 nationally). (R. 22)

Counsel's general skepticism about the existence of one or more of these jobs, and his attack on the notion of relying on the DOT, are unfounded. A vocational expert may rely on the DOT, and the ALJ may rely on the VE's testimony to the extent it is consistent with the DOT. *See* 20 C.F.R. § 404.1566 (d)(1) ("we will take notice of—(1) *Dictionary of Occupational Titles,* published by the Department of Labor...."); *Sargent v. Comm'r of Soc. Sec.,* 476 F. App'x 977, 980 n.1 (3d Cir. 2012) ("Both the ALJ and the [vocational expert] relied on the classifications in the DOT, as the applicable regulations permit."). Indeed, the ALJ may himself rely on the DOT in lieu of calling a vocational expert. *See Benton v. Comm'r of Soc. Sec.,* No. 3:11-CV-4629, 2012 WL 3133937, at *10 (D.N.J. July 31, 2012); *see also Coates v. Colvin,* No. CIV. 14-0265, 2014 WL 4792199, at *4 (W.D. Pa. Sept. 24, 2014) *Devault v. Astrue,* No. 2:13-CV-0155, 2014 WL 3565972, at *6 (W.D. Pa. July 18, 2014).

Plaintiff's counsel attacks the vocational expert's testimony as "ignorant," "incompetent," "biased," "frankly incoherent," and the like.[4] Substantively,

---

[4] Here, counsel's argument is consistent with the tone he took at the hearing. It is fair to say that counsel's attitude toward the ALJ, civil at first, degenerated into

15

however, his complaints have little to support them. A typographical error as to dates on the VE's resume was corrected on the spot. (R. 45–46) The fact that the VE had not himself placed anyone in a job, and was unfamiliar with licensing requirements for tattoo artists, does not undermine the ALJ's conclusions here. (R. 53–54)

Mr. Jimenez's real complaint is that the ALJ's step 5 conclusion was based on the RFC, which Jimenez disputes. As found above, however, the ALJ's findings were supported by substantial evidence. Where that is true, it is not error for the ALJ to pose a hypothetical to the VE which reflects the ALJ's earlier findings as to the claimant's residual functional capacity. *See Plummer v. Apfel,* 186 F.2d 422, 431 (3d Cir. 1999).

The ALJ's conclusion of non-disability at Step 5 was well supported by the testimony of the VE and other evidence.

## III.   CONCLUSION

For the reasons expressed above, the ALJ's decision is AFFIRMED.

Dated: May 11, 2016

**KEVIN MCNULTY**
**United States District Judge**

---

insolent sarcasm, far out of proportion to any perceived provocation. The ALJ is to be commended for his patience and judicial demeanor. (*See* R. 68–72)

16